ANGELA KIERNAN ET AL. *v.* ROADWAY
EXPRESS, INC., ET AL.
(5779)

SPALLONE, DALY and NORCOTT, Js.

Argued March 9—decision released August 23, 1988

*Michael J. McClary,* with whom, on the brief, was *John J. Keefe, Jr.,* for the appellant (named defendant).

*Carl J. Schuman,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Robert B. Teitelman,* assistant attorney general, for the appellee (defendant Second Injury and Compensation Assurance Fund).

DALY, J. The defendant, Roadway Express, Inc. (Roadway), is appealing from the decision of the compensation review division (CRD) reversing an order by the workers' compensation commissioner (commissioner) transferring liability for compensation benefits payable to the claimant,[1] Angela Kiernan, from Roadway to the defendant Second Injury and Compensation Assurance Fund (Fund).[2] Roadway claims that the CRD erred (1) in determining that the Fund was not liable for payments, and (2) in considering the Fund's appeal from the decision of the commissioner due to procedural defects in that appeal. We find no error.

In his finding and award filed October 4, 1983, the commissioner found the following facts. The claimant is the dependent widow of the decedent, who was employed by Roadway as a freight terminal manager at the time of his death. This position entailed long working hours which had been increased due to a per-

---

[1] Roadway has withdrawn its appeal against the claimant and, therefore, she is not involved in this appeal.

[2] Roadway has not appealed from the CRD's dismissal of its appeal from the decision of the commissioner alleging that the decedent's death did not arise out of and in the course of employment. The CRD dismissed this appeal for failure timely to file the reasons for appeal in accordance with § 31-301-2 of the Regulations of Connecticut State Agencies.

sonnel shortage and the consequent assumption of additional duties by the decedent. During this time period, the decedent experienced weight loss, fatigue and significant job related stress. Earlier in his employ with Roadway, the decedent had experienced chest pains and was diagnosed as having "angina, secondary to probable coronary artery disease." On September 28, 1979, the decedent, while in the course of making a telephone call, died at his office desk.

The commissioner found that the decedent's death arose out of and in the course of his employment. The commissioner further found that the decedent had a preexisting, permanent physical impairment and that the decedent's death was due to the stress arising out of and in the course of his employment. It was further found that his death was caused by both the preexisting condition and the stress and that his death was a condition which was materially and substantially greater than that which would have resulted from the second injury (stress) alone. Accordingly, the commissioner ordered that the Fund pay the claimant benefits as directed by General Statutes § 31-349.[3]

---

[3] General Statutes (Rev. to 1979) § 31-349 provided in pertinent part: "The fact that an employee has suffered previous disability, or received compensation therefor, shall not preclude him from compensation for a later injury, nor preclude compensation for death resulting therefrom. If an employee who has previously incurred, by accidental injury, disease or congenital causes, total or partial loss of, or loss of use of, one hand, one arm, one foot or one eye, or who has other permanent physical impairment, incurs a second disability by accident or disease arising out of and in the course of his employment, resulting in a permanent disability caused by both conditions which is materially and substantially greater than that which would have resulted from the second injury alone, he shall receive compensation for the entire amount of disability, including total disability, and necessary medical care, as elsewhere provided in this chapter, notwithstanding the fact that part of such disability was due to prior accidental injury, disease or congenital causes. The employer by whom the employee is employed at the time of the injury, or his insurance carrier, shall in the first instance pay all awards of compensation and all medical expenses provided by this

On appeal, the CRD ruled that Roadway had failed to comply with the notice provision of § 31-349 which requires an employer or its insurance carrier to notify the custodian of the Fund of a claim to transfer liability within ninety days prior to the expiration of 104

chapter for the first one hundred four weeks of disability. As a condition precedent to the liability of the second injury fund, the employer or his insurance carrier must, ninety days prior to the expiration of the one-hundred-four-week period, notify the custodian of the second injury fund of the pending case and shall furnish to said custodian a copy of the agreement or award together with all information purporting to support his claim as to the liability of the second injury fund, and shall make available to the custodian all medical reports as the custodian shall desire. Failure on the part of the employer or the carrier to comply does not relieve the employer or carrier of its obligation to continue furnishing benefits under the provisions of the act. In the event the custodian shall reject the claim of the employer and its insurer, the question shall be submitted to the commissioner having jurisdiction, as promptly as possible, and the employer or carrier shall continue furnishing benefits until the outcome is finally decided, and if the employer or carrier prevails all payments made beyond the one-hundred-four-week period shall be reimbursed to the employer or carrier by the second injury fund. After the employer or its insurer has completed the payment for the one-hundred-four-week period, he shall file with the commissioner having jurisdiction, and with the custodian of the second injury fund, a form indicating that all compensation and medical bills have been paid for the one-hundred-four-week period, and indicating thereon the date the custodian was notified of the pending case. Thereafter all responsibility for compensation and medical treatment shall be with the custodian of the second injury fund. If the subsequent injury of such an employee resulting from an accident arising out of and in the course of his employment shall result in the death of the employee, and it shall be determined that either the injury or death would not have occurred except for such preexisting permanent physical impairment, the employer or his insurance carrier shall, in the first instance, pay the funeral expense described in this chapter, and shall pay death benefits as may be due for the first one hundred four weeks. Ninety days prior to the expiration of the one-hundred-four-week period, the employer or his insurance carrier shall notify the custodian of the second injury fund of the pending case and shall furnish to said custodian a copy of the agreement or award. After the employer or its insurer has completed the payment for the one-hundred-four-week period, he shall file with the commissoner having jurisdiction, and with the custodian of the second injury fund, a form indicating that all compensation has been paid for the one-hundred-four-week period, and indicating thereon the date that the custodian was notified of the pending

weeks following the occurrence of the disability.[4] Consequently, the CRD denied the transfer of liability from Roadway to the Fund and reversed the commissioner's ruling.

Roadway claims that the CRD erroneously applied the notice provision of § 31-349 relating to nonfatal disabilities to the present case which involves a fatality. The portion relevant to nonfatal disabilities provides that *"[a]s a condition precedent to the liability of the second injury fund,* the employer or his insurance carrier must, ninety days prior to the expiration of the one-hundred-four week period, notify the custodian of the second injury fund of the pending case . . . ." (Emphasis added.) General Statutes (Rev. to 1979) § 31-349. Roadway argues that, in the absence of similar language providing that notice is a condition precedent to the transfer of liability in the case of a fatality, the use of "shall" in the latter context is directory rather than mandatory. Roadway contends, therefore, that its tardy filing should not preclude the transfer of liability to the Fund. Roadway also claims that the Fund waived any defect in notice by participating in the hearings after that notice and further contends that the Fund was not prejudiced in light of its participation in the hearings. Although the Fund concedes that the CRD applied the incorrect portion of § 31-349, it nevertheless argues

case. Thereafter all responsibility for compensation shall be with the custodian of the second injury fund. . . ."

Section 31-349 is in effect divided into two portions, the first of which addresses nonfatal disabilities and the latter of which relates to, as in this case, fatalities. With respect to nonfatal disabilities, No. 86-31 of the 1986 Public Acts made the following change. "As a condition precedent to the liability of the second injury fund, the employer or his insurance carrier *shall,* ninety days prior to the expiration of the one-hundred-four-week period, notify the custodian of the second injury fund of the pending case . . . ." (Emphasis added.)

[4] It is undisputed that Roadway did not file notice with the Fund until twenty-nine weeks after the expiration of the statutorily prescribed time period.

that the decision of the CRD was proper since the notice requirement vis-a-vis fatalities is mandatory rather than directory.

The most satisfactory and conclusive test for determining whether a statute is mandatory or directory is whether the prescribed mode of action is of the essence of the thing to be accomplished or, in other words, whether it relates to a matter of substance or of convenience. *Tramontano* v. *Dilieto,* 192 Conn. 426, 432, 472 A.2d 768 (1984); *Weiss* v. *Newtown,* 4 Conn. App. 200, 202, 493 A.2d 273 (1985). The statutory notice provision pertaining to fatalities is substantively integral to § 31-349; it enables the Fund to be apprised promptly of a pending claim, to obtain a copy of any agreement or award and to have immediate access to relevant medical reports. *Plesz* v. *United Technologies Corporation,* 174 Conn. 181, 188, 384 A.2d 363 (1978). "Such information is essential to enable the fund to assess promptly its alleged liability and to establish immediately its financial reserves. A further objective is to give the fund a reasonable period of time within which to investigate the claim and to prepare to meet it." Id. Furthermore, notice requirements in the workers' compensation act are to be strictly construed. *Misiurka* v. *Maple Hill Farms, Inc.,* 15 Conn. App. 381, 384, 544 A.2d 673 (1988). We conclude, therefore, that the notification provision of § 31-349 relating to a fatality is mandatory rather than directory.

This conclusion is consistent with the statute's directive that an employer "shall" notify the Fund within the prescribed time period. In its ordinary usage, the word "shall" means that the directive in question is mandatory, absent legislative intent to the contrary. *Farricielli* v. *Personnel Appeal Board,* 186 Conn. 198, 203, 440 A.2d 286 (1982); see *Weiss* v. *Newtown,* supra, 203. " 'A statute which provides that a thing shall be done in a certain way carries with it an implied prohi-

bition against doing that thing in any other way.' " *Farricielli* v. *Personnel Appeal Board*, supra, 204, quoting *State ex rel. Barlow* v. *Kaminsky*, 144 Conn. 612, 620, 136 A.2d 792 (1957); see also *Jones* v. *Civil Service Commission*, 175 Conn. 504, 509, 400 A.2d 721 (1978). We note also that the court in *Plesz*, supra, construed virtually identical language regarding notification in the nonfatal disability portion of an earlier version of § 31-349 as mandatory rather than directory.

We are unpersuaded by Roadway's argument that the failure to amend the notification provision regarding fatalities in a similar fashion to that regarding nonfatalities, namely, to include the "condition precedent" language, evinces a legislative intent that the former should be directory rather than mandatory. The legislative history of § 31-349 does not support such a conclusion, and Roadway's argument in this regard amounts to little more than speculation.

Nor are we persuaded by Roadway's arguments that the Fund waived any defect in notification by participating in the hearings and that the Fund was not prejudiced due to that opportunity to participate. The Fund's participation in the hearings, despite Roadway's failure timely to comply with the notification procedure, was consistent with the Fund's obligation to ascertain its potential liability. Roadway has failed to present any authority for the proposition that such participation constitutes a waiver by the Fund of defective notice. Similarly, we find no statutory basis for concluding that a showing of lack of prejudice was intended to have an ameliorative effect on an employer's failure timely to notify the Fund.

Thus, the CRD correctly concluded that the Fund was not obligated to pay compensation benefits to the claimant although that conclusion was the result of the application of the incorrect portion of § 31-349. Where,

however, a correct decision is reached but on mistaken grounds, that decision will be sustained if, as in this case, proper grounds exist to support it. *Norwich* v. *Norwalk Wilbert Vault Co.,* 11 Conn. App. 332, 334, 527 A.2d 716 (1987).

Roadway also claims that the CRD was without jurisdiction to hear the Fund's appeal from the decision of the commissioner due to the Fund's failure properly to file its reasons for appeal[5] and its failure to file a motion to correct the finding of the commissioner.[6] Roadway, however, never raised the former issue in the proceedings before the CRD. Similarly, our review of the record fails to disclose a motion to dismiss by Roadway premised on the Fund's failure to file a motion to correct. This court is not bound to consider claims of error when, as here, those claims were not distinctly raised at trial. Practice Book § 4185. Under these circumstances, we decline to review these claims.

There is no error.

In this opinion the other judges concurred.

---

[5] Regs., Conn. State Agencies § 31-301-2 provides: "Within ten days after the filing of the appeal petition, the appellant shall file with the compensation review division his reasons of appeal. Where the reasons of appeal present an issue of fact for determination by the division, issue must be joined by a pleading filed in accordance with the rules applicable in ordinary civil actions; but where the issue is to be determined upon the basis of the finding of the commissioner and the evidence before him, no pleadings by the appellee are necessary."

[6] Regs., Conn. State Agencies § 31-301-4 provides: "If the appellant desires to have the finding of the commissioner corrected he must, within two weeks after such finding has been filed, unless the time is extended for cause by the commissioner, file with the commissioner his motion for the correction of the finding and with it such portions of the evidence as he deems relevant and material to the corrections asked for, certified by the stenographer who took it, but if the appellant claims that substantially all the evidence is relevant and material to the corrections sought, he may file all of it so certified, indicating in his motion so far as possible the portion applicable to each correction sought. The commissioner shall forthwith, upon the filing of the motion and of the transcript of the evidence, give notice to the adverse party or parties."